**BELL ATLANTIC MOBILE SYSTEMS, INC. and Haig Geovjian, Appellants,**

v.

**The BOROUGH OF CLIFTON HEIGHTS, DELAWARE COUNTY, Pennsylvania, and Bernard G. Pipe, Code Enforcement Officer, Borough of Clifton Heights.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1995.

Decided June 27, 1995.

Reargument Denied Aug. 21, 1995.

---

**3.** I note that the Board's action originally declaring Parolee delinquent was not introduced at the hearing.

**910** ■

Robert E.J. Curran, for appellant.

Francis J. Catania, for appellee Borough of Clifton Heights.

Before FRIEDMAN and NEWMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Bell Atlantic Mobile Systems, Inc. and Haig Geovjian[1] (collectively, Bell) appeal from an order of the Court of Common Pleas of Delaware County which entered judgment in favor of the Borough of Clifton Heights (Borough) and against Bell on Bell's Complaint in Mandamus. We affirm.

On October 14, 1992, the Borough issued a building permit to Bell for construction of a fifty foot tower for the transmission of mobile phone cellular calls.[2] The tower was to be built inside an existing building which housed a typewriter repair and service center. According to the site plan, the repair and service center would remain in one part of the building while another portion of the building was to be allocated to Bell for the tower. Bell began construction immediately after issuance of the permit.

In December 1992, the Borough Council voted to revoke Bell's building permit. The Borough listed six reasons for the revocation, all of which involved Bell's failure to apply for permits, provide information or comply with ordinance requirements.[3] Bell appealed

---

1. Haig Geovjian is the owner of the property on which Bell sought to construct its project.

2. Apparently, in July or August 1992, a Gerald Gaster, on behalf of Bell Atlantic Mobile Systems, Inc., met with the Borough's Code Enforcement Officer, Bernard G. Pipe. Pipe and Gaster discussed the project and Pipe instructed Gaster to submit plans along with the building permit application, to the Borough for review. Pipe apparently determined that the proposed use was a permissible one under the Borough's zoning code. In September of 1992, Gaster returned with the completed building permit application and a set of plans for the project. Pipe reviewed the plans and directed Gaster to submit additional plans so that an engineering study could be undertaken. On September 30, 1992, Pipe delivered the building permit application and project plans to Pennoni Associates, which served as the Borough's Building Inspector and

Engineering Staff. Pennoni Associates reviewed the plans and advised the Borough that it was all right to issue the building permit. Pipe then issued the permit on October 14, 1992.

3. The Borough stated that it based its revocation on the following considerations:

1. Chapter 5, Part 1, Section 106 of the Code of Ordinances of the Borough of Clifton Heights provides in part that no person, firm or corporation shall perform any electrical work in the Borough without first obtaining a permit to do so from the building official. The Borough has not received an application for a permit to do electrical work for the above-referenced site.

2. The applicant has not provided information sufficient to determine whether or not the proposed use of the facility will interfere with the Borough police radio network pursuant to

the revocation to the Zoning Hearing Board (ZHB)[4] and also filed a Complaint in Mandamus seeking reinstatement of the building permit. The Complaint in Mandamus contained two counts. The first alleged improper revocation of the building permit on the theory that the proposed use is permitted by the zoning ordinance as a "telephone central office." The second count is an equitable estoppel argument, claiming that, even if Bell's permit was issued by mistake, Bell had acquired a vested right in the permit. After a non-jury trial on the Complaint in Mandamus, the trial court ordered judgment in favor of the Borough and against Bell because it found that Bell had not established sufficient due diligence and good faith to have obtained a vested right in the building permit. Bell appeals from that decision.

On appeal,[5] Bell argues that (1) the trial court erred in denying mandamus after it found that Bell had a clear right to the building permit under the terms of the ordinance, and (2) the trial court erred or abused its discretion in concluding that Bell had not acquired a vested right in the building permit. The Borough responds that (1) the trial court did not find that Bell had a clear right to the building permit, and (2) the trial court's finding that Bell did not have a vested

right to the revoked building permit is supported by sufficient evidence and by the applicable law. Thus, the Borough argues, the trial court properly denied Bell's mandamus request. We agree.

Mandamus is an extraordinary writ used to compel performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant and lack of any other appropriate and adequate remedy. *DGD Realty Associates v. Della Vecchia,* —— Pa.Commonwealth Ct. ——, 654 A.2d 626 (1995). First, Bell argues that mandamus is the appropriate remedy here because the trial court effectively found that Bell has a clear right to relief. Bell bases this claim of a clear right to relief on the following statement of the trial court: "Of course, Bell Atlantic cannot be faulted by the Borough's issuance of the building permit in that the use could arguably fall within the definition of telephone central office." (Trial court op. at 5.) However, in order to support its proposition, Bell has taken this sentence out of context. We do not read this statement so broadly, particularly in light of the sentences which precede and follow that quoted by Bell.[6] Bell argued to the trial court, and

---

Chapter 5, Part 1, Section 117, of the Code of Ordinances of the Borough of Clifton Heights.

3. The applicant has not provided information sufficient to determine whether any of the parties in interest at this site is a Public Utility Corporation, pursuant to Article VII, Section 700 of the Borough of Clifton Heights Zoning Ordinance of 1948, (Ordinance No. 272 as amended by Ordinance 279 and Ordinance 379.)

4. The applicant has not compiled [sic] with Article VII, Section 701 of the Borough of Clifton Heights Zoning Ordinance of 1948, (Ordinance No. 272 as amended by Ordinance 279 and Ordinance 379) in receiving a special exception after public hearing for the proposed use.

5. The applicant has not provided information sufficient to determine whether the proposed use is a Prohibited Use as that term is defined in Article VII, Section 706 of the Borough of Clifton Heights Zoning Ordinance of 1948, (Ordinance No. 272 as amended by Ordinance 279 and Ordinance 379.)

6. The proposed use is a "Land Development" as defined in Section 107 of the Pennsylvania Municipalities Planning Code. The applicant has failed to receive Land Develop-

ment approval from the Borough of Clifton Heights as required by Borough Ordinance 715 of 1991.
(R.R. at 27, 28.)

4. The trial court noted that the ZHB had not conducted any review at the time of the trial court's opinion. (Trial ct. op. at 3.) According to the Borough, "Bell has consistently delayed any Zoning Hearing and recently filed a Petition to Stay a scheduled hearing." (Appellee's Brief at 3.)

5. Our scope of review in a mandamus action is limited to determining whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support the trial court's findings. *DGD Realty Associates v. Della Vecchia,* —— Pa.Commonwealth Ct. ——, 654 A.2d 626 (1995); *Randolph Vine Associates v. Zoning Board of Adjustment of Philadelphia,* 132 Pa.Commonwealth Ct. 452, 573 A.2d 255 (1990), *appeal denied,* 527 Pa. 589, 588 A.2d 512 (1991).

6. The paragraph containing the sentence on which Bell relies states in pertinent part:

again to us, that the right to the building permit is clear because the proposed use is permitted by the zoning ordinance.[7] Read as a whole, the trial court's language indicates that the trial court did *not* believe that the zoning ordinance clearly permitted Bell's proposed use.[8]

Without deciding the merits, our review of the arguments and the record convinces us that the trial court did not err in denying mandamus because it is not clear that Bell complied with the appropriate ordinances so as to have a clear legal right to relief and that the Borough had a clear legal duty to issue the building permit for this project.

■ Next, Bell attempts to engraft a vested rights argument onto its mandamus action. Before us, Bell challenges the trial court's determination that Bell did not acquire a vested right in the revoked building permit because Bell did not establish that it had exercised due diligence in attempting to comply with the law and that it had exhibited good faith throughout the proceedings. We do not believe that vested rights should be raised initially in this mandamus action.

■ Vested rights is a "judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities. In part it involves the equitable concept of detrimental reliance." *Highland Park Community Club v. Zoning Board of Adjustment,* 509 Pa. 605, 612, 506 A.2d 887, 891 (1986).[9] Essentially, the concept of "vested rights" acts to *relieve inequities* which would otherwise arise in the law whereas mandamus acts to *compel performance* of a ministerial act or mandatory duty where the petitioner has a clear legal right and the respondent has a clear legal duty. Bell inappropriately attempts to use

---

The transformation of a modest brick building into a building housing a fifty (50) foot radio tower certainly questions whether or not Bell Atlantic should have proceeded with a land development application. Of course, Bell Atlantic cannot be faulted by the Borough's issuance of the building permit in that the use could arguably fall within the definition of telephone central office. This Court finds however that the lack of information concerning the antennae and satellite dishes evidence bad faith in disclosing final design of the tower.... These ommissions [sic] hindered consideration of the full appplication [sic] by the Borough.

Trial ct. op. at 5.

7. A telephone central office is defined in the ordinance as:

A building or part of a building used for the transmission and exchange of telephone or radio telephone messages; provided that, in Residence Districts, such use shall not include the transaction of business with the public, storage of materials, trucks, or repair facilities or housing of repair crews.

Article I, Section 103 of the Clifton Heights Borough Zoning Ordinance. (R.R. at 244). The Borough contends that the project does not comply with the zoning ordinance because the tower is not a building and, therefore, not a permitted use covered by the ordinance's definition of a telephone central office.

8. In addition, the Borough contends that the tower must comply with the Borough's Subdivision and Land Development Ordinance because it is a "land development" within the definition of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as*

amended, 53 P.S. §§ 10101–11201. A "land development" is "[t]he improvement of one lot or two or more contiguous lots, tracts or parcels of land *for any purpose involving* ... (ii) *the division or allocation of land or space,* whether initially or cumulatively, *between or among two or more existing or prospective occupants* by means of, or for the purpose of streets, common area, *leaseholds,* condominiums, building groups or other features." Section 107 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10107 (emphasis added). The Borough alleges that the lease between Bell and the present property owners creates a land development because it allows the present use to remain and divides the building, allocating a portion to Bell Atlantic for their development of a second primary use.

9. Pennsylvania courts have developed a five factor approach to determining whether a permit holder has acquired vested rights in a permit:

(1) the permit holder's exercise of *due diligence* in attempting to comply with the law;

(2) the permit holder's *good faith* throughout the proceedings;

(3) the *expenditure by him of substantial unrecoverable funds* ;

(4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

(5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Highland Park Community Club; Petrosky v. Zoning Hearing Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979).

vested rights, which is based upon an *equitable* concept, to create the clear *legal* right and corresponding duty necessary for mandamus. The vested rights issue should be addressed in Bell's appeal of the revocation to the ZHB, not in this mandamus action.[10]

Bell has not met the requirements for mandamus because Bell has not shown a clear legal right to the permit, a corresponding duty on the part of the Borough and insufficiency of other remedies.

Accordingly, we affirm.

### ORDER

AND NOW, this 27th day of June, 1995, the order of the Court of Common Pleas of Delaware County, dated August 4, 1994, is affirmed.

---

10. *See, e.g., Randolph Vine Associates,* where the zoning board's rejection of the vested rights argument was appealed to the trial court and then consolidated with a second action requesting a writ of mandamus. There, the trial court had the benefit of the zoning board's findings and conclusions on the vested rights issue and reviewed that issue in its appellate capacity.