# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Ream,  :
                Appellant  :
                                   :
                v.  :  No. 872 C.D. 2018
                                   :  ARGUED: April 9, 2019
Pennsylvania Department of  :
Public Welfare  :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                            **FILED: May 3, 2019**


        Jennifer Ream (Ream) appeals from an order of the Court of Common Pleas of the Seventeenth Judicial District (Snyder County Branch) (trial court) that denied her motion for post-trial relief seeking reconsideration of a non-jury verdict in favor of her former employer, the Pennsylvania Department of Public Welfare (Department).[1] We affirm.

        The present appeal originated with Ream's four-count discrimination complaint alleging that the Department violated the Pennsylvania Human Relations Act (PHRA)[2] and asserting the following counts: **Count I**-PHRA-Hostile Work

---

[1] In 2014, the Department changed its name to the Department of Human Services.

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951 - 963.

Environment Based on Disability;[3] **Count II**-PHRA-Disability Based Constructive Discharge; **Count III**-PHRA-Retaliatory Hostile Work Environment; and **Count IV**-PHRA-Constructive Discharge due to Retaliation for Protected Activity (Equal Opportunity Employment Commission "EEOC" complaints).[4] (October 19, 2015, Complaint 1-12; Reproduced Record "R.R." at 12-21.) Ream appeals only from the verdict as to Count IV.

In support of the verdict, the trial court adopted the Department's proposed findings of fact and conclusions of law and rendered an opinion specifying the evidence and the law upon which it relied.[5] Pursuant to the foregoing, the pertinent background is as follows. From 2005 to 2014, Ream worked as a residential services aide (RSA) at Selinsgrove Center (Center). (Finding of Fact "F.F." No. 1.) The Center is a home for mentally challenged persons and an RSA provides direct care with respect to activities such as dental care, dressing, showering, and help with meals. (F.F. Nos. 2 and 3.) Beginning in 2011, Ream worked the 2:00 p.m. to 10:30 p.m. shift. (F.F. No. 4.) Although her tenure at the Center was not without incident,[6] she received consistently positive job evaluations over the course of her employment.

---

[3] The alleged disability consisted of "mental impairments of generalized anxiety and major depressive disorder." (October 19, 2015, Complaint at ¶9; Reproduced Record "R.R." at 13.)

[4] Over the course of her employment, Ream filed five complaints with the EEOC: August 2011-gender discrimination; February 2012-unfavorable performance evaluation in retaliation for 2011 filing; April 2013-retaliation for pending claims; February 2014-discrimination and retaliation for engaging in a protected activity; and July 2014-constructive discharge due to hostile work environment. (Findings of Fact "F.F." Nos. 43, 44, 46, 49, and 52.)

[5] (Department's Proposed Findings of Fact and Conclusions of Law; Reproduced Record "R.R." at 155-68.)

[6] There is no indication that the Center investigated any of these incidents in a manner inconsistent with the processes required by the applicable collective bargaining agreement or that it administered inappropriate discipline for any infractions. (*See* F.F. Nos. 20-42.)

At any rate, the incident that precipitated Ream's decision to quit her job occurred in June 2014 when a resident wandered away while Ream was assisting four other residents with dining. (F.F. Nos. 34 and 36.) Ream believed that another RSA was monitoring the resident in the restroom. (F.F. No. 37.) On July 10, 2014, Ream quit her job out of fear of possible termination. (Trial Transcript "T.T." at 186 and 188; R.R. at 357 and 359.) She voluntarily terminated her position notwithstanding a "satisfactory" final work evaluation and special commendations from her work supervisor. (Trial Court's June 4, 2018, Op. at 3.) In August 2014, the Department issued a notice of no-discipline to Ream regarding the June 2014 incident. (F.F. No. 39.)

In October 2015, Ream filed the instant complaint. After a two-day non-jury trial, the trial court entered a verdict in favor of the Department. In Ream's motion for post-trial relief, she abandoned Count I but sought the trial court's reconsideration of the remaining three counts. The trial court denied Ream's motion for post-trial relief. As noted, the instant appeal pertains only to Count IV.

On appeal, we consider whether the trial court erred in determining that Ream failed to satisfy the elements necessary for establishing a claim for constructive discharge due to retaliation for protected activity. In conducting appellate review in a non-jury case, we are limited to determining whether the trial court's findings of fact are supported by competent evidence and whether it erred in applying the law. *Piston v. Hughes*, 62 A.3d 440, 443 (Pa. Super. 2013). "Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion." *Id*. In addition, "[w]hen this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious

3

party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected." *Id.* As in other cases, conclusions of law are not binding on an appellate court and our review of questions of law is plenary. *Id.*

In support of her position, Ream primarily asserts that the trial court abused its discretion and capriciously disbelieved her evidence by failing to view the totality and timing of the events. To that end, she has substituted her proposed findings of fact for the ones that the trial court adopted. However, her substitution constitutes an improper attempt to have this Court reassess the credibility of witnesses and reweigh the evidence. Accordingly, mindful that the trial court adopted the Department's proposed findings of fact, we turn to an analysis as to whether Ream established a claim for constructive discharge due to retaliation for protected activity.

In general, a claimant attempting to establish constructive discharge "'must prove first that [she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign.'" *Kegerise v. Delgrande*, 183 A.3d 997, 1003 (Pa. 2018) [quoting *Green v. Brennan*, ___ U.S. ___, ___, 136 S. Ct. 1769, 1777 (2016)]. A claimant must establish more than a stressful work environment. *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163 (3d Cir. 2001). Specifically, factors that employees commonly cite when making a constructive discharge claim include: an employer threatens discharge and/or urges or suggests that an employee resign or retire; an employer demotes an employee or reduces his pay or benefits; an employer transfers an employee to a less desirable position and/or alters his job responsibilities; and/or an employer gives an employee

unsatisfactory job evaluations. *Clowes v. Allegheny Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).

In the present case, the trial court concluded that Ream failed to establish any of the *Clowes* factors. Specifically, the trial court found no indication that the Department threatened discharge or urged Ream to resign, instead affording weight to her admission that she quit out of fear of termination after a resident wandered away from the Center. In so doing, the trial court disregarded her subjective belief that the Department planned to terminate her employment and attributed significance to the fact that she chose to quit despite her final work evaluation of "satisfactory" and special commendations from her work supervisor. *See Charles v. Unemployment Comp. Bd. of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989) ("[w]here an employee resigns in order to avoid the chance of being fired, that employee is deemed to have voluntarily quit").

In addition, there is no indication that the Department punished Ream and/or singled her out by transferring her to a less desirable position or altering her job responsibilities. Instead, regarding one instance when the Department reassigned Ream to another area, the trial court found that the Department reassigned *all* of the staff members from the housing unit under review to other areas during the pendency of the investigation regarding a specific incident. (F.F. Nos. 24-25.)

Further, notwithstanding Ream's allegations that she experienced retaliation for the EEOC complaints, Ream conceded that her lowest evaluation was "satisfactory" and that she received several "commendable" evaluations. (T.T. at 91-92; R.R. at 262-63.) As the trial court observed, her final evaluation indicated a "satisfactory" in every category and a final comment from her work supervisor of

5

"Thanks for your dedication in doing a good job." (Trial Court's March 26, 2018, Op. at 4.) More specifically, the trial court found:

> [PB], a coworker [registered nurse], testified that Ms. Ream "was very caring," "very good at her job." [T.T. at 127; R.R. at 298.] [NI], a Residential Services Supervisor, who worked with Ms. Ream for a period of two years and had occasion to observe [her] job performance, stated she performed her job duties, stuck to the routine, and took care of her charges. He never had any concerns about the way she interacted with her coworkers, never observed staff "picking on her." [T.T. at 357-58; R.R. at 528-29.]

(*Id*. at 3-4.)

Moreover, in concluding that there was no retaliation in response to Ream's EEOC complaints, the trial court determined that none of the trial witnesses, none of the individuals who allegedly were hostile to Ream, and none of the coworker-witnesses to her job performance had knowledge of those complaints. (Trial Court's March 26, 2018, Op. at 5-6.) Consistent with this, the trial court accepted the testimony of the director of human resources at the Center that such complaints were confidential, were not kept as part of an employee's personnel file, and were not disclosed to coworkers.[7] (*Id*.) Mindful that Ream had to prove "actual knowledge and real intent" by the persons alleged to have caused any retaliatory employment actions in order to establish causation between the protected activity and those alleged actions,[8] the trial court did not err in determining that she failed to

---

[7] (T.T. at 377; R.R. at 548.)

[8] *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002).

6

establish constructive discharge due to retaliation for protected activity in support of Count IV.[9]

Accordingly, we affirm.

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[9] Given our determination that Ream failed to satisfy the elements necessary for establishing a claim under Count IV, we need not reach the Department's argument that she waived Count IV by failing to appeal from the trial court's verdict against her regarding Count III-retaliatory hostile work environment.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Ream, : 
               Appellant : 
               : 
         v. :   No. 872 C.D. 2018
               : 
Pennsylvania Department of : 
Public Welfare : 

## **O R D E R**

AND NOW, this 3rd day of May, 2019, the order of the Court of Common Pleas of the Seventeenth Judicial District (Snyder County Branch) is hereby AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge