**[J-34A-2020, J-34B-2020, J-34C-2020 and J-34D-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE: ADOPTION OF K.M.G. | : | No. 55 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 580 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0239. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF: A.M.G. | : | No. 56 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 581 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0240. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF S.A.G. | : | No. 57 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 582 WDA 2018, |
| | : | affirming the Decree entered March |
| | : | 5, 2018 in the Court of Common |
| | : | Pleas of McKean County at No. 42- |
| | : | 17-0241. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |
| | | |
| IN RE: ADOPTION OF J.C.C. | : | No. 58 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| APPEAL OF: T.L.G., MOTHER | : | Superior Court entered September |
| | : | 13, 2019 at No. 583 WDA 2018, |

:   affirming the Decree entered March
:   5, 2018 in the Court of Common
:   Pleas of McKean County at No. 42-
:   17-0242.
:
:   SUBMITTED:  April 16, 2020

**OPINION**

**JUSTICE BAER**                    **DECIDED:  NOVEMBER 10, 2020**

For the third time in four years, we address the appointment of counsel to represent children in contested termination of parental rights proceedings pursuant to Section 2313(a) of the Adoption Act, 23 Pa.C.S. § 2313(a).[1]  As we have previously recognized, "Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.* the child's preferred outcome," and the failure to appoint counsel constitutes structural error in the termination proceedings.  *In re T.S.*, 192 A.3d 1080, 1082 (Pa. 2018).  We reiterate that an attorney appointed as counsel to represent a child's legal interests may also serve as the child's guardian *ad litem* ("GAL"), responsible for asserting the child's best interests, so long as the child's legal interests do not conflict with the attorney's view of the child's best interests.  *Id.*

In this case, we consider issues relating to appellate review of a trial court's appointment of legal counsel under Section 2313(a).  For the reasons set forth below, we conclude that, while an appellate court should verify that the orphans' court appointed counsel to represent the child's legal interests, it may not assess *sua sponte* the performance of that representation.  After review, we affirm the decision of the Superior Court, which affirmed the termination of parental rights in this case.

**I. Facts and Trial Court Determination**

---

[1] The full text of Section 2313(a) is set forth *infra* at 23 n.21.

The issue before this Court involves a question of law related to whether, and how, an appellate court should review *sua sponte* appointed counsel's representation of children's legal interests in a termination of parental rights proceeding. Specifically, we address, *inter alia*, whether reviewing courts must determine *sua sponte* whether a conflict existed in an attorney's representation of a child's best interests and legal interests and whether counsel's advocacy for the child's legal interests included placing the child's preferred outcome on the record. As applied to the case at bar, the parties dispute whether a remand is necessary to determine if the appointed counsel suffered from a conflict in representing the children's legal interests and best interests and for the placement of the children's preferred outcomes on the record. Notably, the merits of the termination of parental rights in this case are not before this Court. Nevertheless, we briefly address the facts leading to the termination proceeding to provide context to the questions surrounding the children's representation in this case.

Appellant T.L.G. ("Mother") is the mother of four children: A.M.G., S.A.G., K.M.G., and J.C.C (collectively "the Children"). [2] At the time of the termination of parental rights hearing, the children were eight, six, five, and two years old, respectively. The Juvenile Court in McKean County became involved with the family in August 2015, when the McKean County Children and Youth Services ("CYS") filed dependency petitions for all

---

[2] Unless otherwise specified, we draw the factual recitation from the memoranda and orders of the McKean County Orphans' Court authored by President Judge John H. Pavlock in support of termination of Mother's parental rights to the four children in this case. We observe that Judge Pavlock oversaw the dependency proceedings in Juvenile Court and the subsequent contested termination of parental rights proceedings in Orphans' Court. The court entered substantially identical memoranda and orders for each child, differing only in regard to specific biographical information. Memorandum and Order, *In re A.M.G.*, No. 42-17-0240, 3/2/2018; Memorandum and Order, *In re S.A.G.*, No. 42-17-0241, 3/2/2018; Memorandum and Order, *In re K.M.G.*, No. 42-17-0239, 3/2/2018; and Memorandum and Order, *In re J.C.C.*, No. 42-17-0242, 3/2/2018. The citations in this opinion derive from the docket entries relating to K.M.G. unless otherwise indicated.

four children, as a result of their parents' inability to provide proper care, especially in regard to their medical care and school attendance. [3]

Specifically, CYS observed that Mother was unable to control chronic lice infestations affecting the children, as manifested in the eldest child having thirty-eight reports of lice during the 2014-2015 school year.[4] The failure to address the issue at home required this child to receive treatments at school, which apparently resulted in other children bullying her. This child also suffered from an untreated gastrointestinal issue resulting in pain and the inability to control her bowels. Despite referrals, Mother did not follow through on recommended medical appointments to address the eldest sibling's significant gastrointestinal issue and also missed newborn appointments for the youngest sibling. Mother additionally faced truancy charges as the eldest child missed forty-seven days of school during the 2014-2015 school year. Given this background, Juvenile Court Judge Pavlock adjudicated the four Children dependent in November 2015.

As is relevant to the issues before this Court, Attorney Mark Hollenbeck began serving as the Children's GAL as early as January 2016.[5] *See* Master's Recommendation - Permanency Review (Non-Placement) dated Jan. 21, 2016. The Master's Recommendation, as adopted by Judge Pavlock, explained that "the views of the

---

[3] At various points during the relevant time period, the Children's father was also involved with and responsible for their care. His involvement, however, is not relevant to the issues before this Court as he consented to the relinquishment of his parental rights in August 2017, which the trial court granted in April 2018. Accordingly, we will not discuss his involvement in the case and, instead, will reference the factual history solely in reference to Mother.

[4] While the record is unclear, it appears that the eldest was the only school-aged child during the 2014-2015 school year.

[5] Two other individuals served as GAL prior to Attorney Hollenbeck's appointment.

child[ren] regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the [GAL]." *Id.* This notation was repeated in subsequent review orders over the next two years.

While Mother was initially compliant with the family's permanency plan in the spring of 2016, her progress slowed in May 2016, when the family's house was condemned. Additionally at this time, Mother had a new paramour, Richard Youngs, III, who was a registered sex offender.[6] During the summer of 2016, due to Mother's unstable housing and her continuing relationship with Mr. Youngs, the court twice placed the Children in short-term foster care.[7] They were returned to Mother's custody in the fall of 2016, after she made some progress. However, during the winter of 2016-2017, the children again experienced lice infestations, and Mother failed to attend to the Children's significant dental issues.[8] Memorandum and Order, dated Mar. 2, 2018, at 3, 6. The court noted that "[t]his lack of dental care and hygiene resulted in the children having extensive dental problems, pain[,] and tooth removal." *Id.* at 3.

The Juvenile Court removed the Children from Mother's custody again in February 2017, following an emergency room visit for S.A.G., then five years old, who had alleged that one of Mr. Youngs' children had sexually assaulted her. Despite the alleged assault, Mother allowed Mr. Youngs to continue to live with her and the Children. The Juvenile Court granted CYS's request to place the Children with their father's aunt and uncle ("Paternal Aunt and Uncle"), who "took immediate efforts to adjust the children's diet and

---

[6] According to the trial court, Mr. Youngs was required to register as a Tier 2 sex offender in Pennsylvania based upon a conviction for sexual battery in North Carolina. Memorandum and Order, dated Mar. 2, 2018, at 2.

[7] In July 2016, the Juvenile Court appointed a Court-Appointed Special Advocate ("CASA") who provided regular, detailed reports regarding the family during the time period relevant to this case.

[8] Attorney Hollenbeck avers that the dental issues began in August 2015.

the children's behaviors and overall health immediately improved." *Id.* at 4. The court additionally stated that Paternal Aunt and Uncle "worked closely with CYS, service providers[,] and medical and dental providers to assure the children's safety and wellbeing." *Id.*

Following the removal, Mother made minimal progress on her reunification goals. Additionally, Mother continued to reside with Mr. Youngs and his children, even though his presence jeopardized her subsidized housing. Notably, Mother "repeatedly tried to hide and deceive other[s] regarding Mr. Youngs' residency in her home." *Id.* Moreover, she did "not have frequent contact with the children," often cancelling appointments which caused the children distress. *Id.* at 4, 7.

In December 2017, CYS filed petitions to terminate Mother's parental rights to the four Children. On January 8, 2018, Judge Pavlock, now sitting as an orphans' court judge, appointed Attorney Hollenbeck to "represent both the best interests and the legal interests" of the four Children after specifically finding that Attorney Hollenbeck could "adequately represent both the [Children's] best interests and legal interests without conflict." Order of January 8, 2018.

While the order did not provide additional details regarding the court's finding of no conflict, we observe that Judge Pavlock had been involved with the Children's case for over two years, during which time Attorney Hollenbeck had served as the Children's GAL. Indeed, as noted above, the permanency review orders repeatedly indicated that Attorney Hollenbeck had ascertained and communicated the children's preferences to the Juvenile Court, upon which information Judge Pavlock presumably relied when determining that Attorney Hollenbeck could be appointed as legal counsel without conflict. *See, e.g.,* Master's Recommendation - Permanency Review (Non-Placement) adopted by Judge Pavlock on June 21, 2017 ("The views of the child[ren] regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by

the [GAL].")  The court additionally indicated that any party could object to the appointment of Attorney Hollenbeck within ten days of the order; however, no party objected. [9]

The court held a termination of parental rights hearing in February 2018.  The court succinctly summarized the testimony provided by the CYS caseworkers, which the court accepted as accurate:

> They all indicated that Mother at times will attend appointments and does have contact with [the Children]. However, the contact and its consistency is intermittent. Mother could have more contact but does not.  They all testified that [the Children] have a bond with Mother.  Each expressed concern regarding Mother's ability and difficulty understanding and following through with their recommendations and requests.  They all testified that Mother puts her relationship with Mr. Youngs and her care of his children ahead of the requirements of the reunification plan and her responsibilities for her children.

Tr. Ct. Op. at 5.  The caseworkers also testified to the Children's dramatic improvement in terms of their health and behavior in the home of Paternal Aunt and Uncle, who were, and presumably remain, willing to adopt the Children.  As is relevant to the issues raised in this case, the GAL/Counsel did not place each child's preferred outcome on the record at this hearing but did assert that he viewed termination to be in the Children's best interests.

Based upon the evidence supporting Mother's inability to care for the Children's medical and dental issues and to progress toward her goals, the court concluded that CYS demonstrated by clear and convincing evidence that Mother's parental rights should be terminated under several subsections of Section 2511(a), which provides grounds for

---

[9] An attorney appointed to serve as both GAL, representing a child's best interests, and as counsel, representing a child's legal interests, as occurred with Attorney Hollenbeck in this case, will be herein referred to as a "GAL/Counsel."

termination of parental rights. Specifically, the court found that Mother "refused or failed to perform parental duties" for at least six months immediately prior to the filing of the termination petition. *Id.* at 12 (referencing 23 Pa.C.S. § 2511(a)(1)). Second, the court opined that "Mother's repeated incapacity and/or refusal has caused [the Children] to be without proper parental care and control and the cause is unlikely to be remedied." *Id.* (indicating the necessary requirements for 23 Pa.C.S. § 2511(a)(2)). Additionally, the court recognized that the Children had been removed from Mother's care for at least six months and that "even with assistance, Mother will be unable to remedy the conditions that necessitated placement." *Id.* (referencing 23 Pa.C.S. § 2511(a)(5)). Finally, the court indicated that "twelve months or more have elapsed from the date of [the Children's] placement and the initial conditions that led to placement continue to exist." *Id.* (demonstrating sufficiency for termination under 23 Pa.C.S. § 2511(a)(8)).

The court additionally found "that the termination of parental rights would best serve [the Children's] developmental, physical and emotional needs and welfare." *Id.* (referencing 23 Pa.C.S. §2511(b)). In so doing, the court emphasized that the Children were doing well in the care of Parental Aunt and Uncle, who indicated their desire to adopt them and to "allow and encourage the [C]hildren to have a relationship with their natural parents." *Id.* at 13.

## II. Superior Court Decision

Mother appealed to the Superior Court raising two issues in her Statement of Matters Complained of on Appeal. She challenged whether the trial court erred in concluding that CYS had proven the grounds for termination of her parental rights under 23 Pa.C.S. § 2511(a) by clear and convincing evidence. She also contested the Orphans' Court's assessment of the effect of termination on the Children for purposes of 23 Pa.C.S. § 2511(b). The trial court subsequently entered brief Pa.R.A.P. 1925(a) opinions referencing its memoranda and orders discussed *supra.*

The Superior Court consolidated the appeals relating to the four Children and heard the case *en banc*, directing the parties to address a new issue: "whether, in reviewing involuntary termination of parental rights decisions, this Court has the obligation to review *sua sponte* whether the [GAL] had a conflict."[10]  *In re Adoption of K.M.G.,* 219 A.3d 662, 666 (Pa. Super. 2019).

The Superior Court first observed that juvenile courts in dependency matters may appoint a GAL "to represent the legal interests and the best interests of the child."  *Id.* at 667 (citing 42 Pa.C.S. § 6311(a); Pa.R.J.C.P. 1151(A)).  If the case transitions into termination proceedings, the court noted that the orphans' courts will often appoint the

---

[10] The Superior Court specifically sought briefing on the following four issues:

> 1. Is it mandatory that the Superior Court, in an appeal from an involuntary termination decision, review *sua sponte* whether the child's legal counsel and/or guardian *ad litem* ["GAL"] properly represented the child's legal interest, particularly in regard to whether there was a conflict between GAL's representation and the child's stated preference?
>
> 2. When a party properly raises the issue of whether a GAL has a conflict before the orphans' court, what is the standard of review that Superior Court must use to review the decision of the trial court?
>
> 3. When a party raises the issue that the GAL has an undisclosed conflict for the first time on appeal before Superior Court, must Superior Court remand the case to the orphans' court to determine whether a conflict exists or may Superior Court make its own determination from the certified record?
>
> 4. What factors must the orphans' court consider and findings the orphans' court must make in determining whether the child's preference differs from the child's best interests and thus, the GAL has a conflict?

*In re Adoption of K.M.G.*, 219 A.3d 662, 666–67 (Pa. Super. 2019).

GAL serving in the dependency proceedings to continue to serve as GAL representing the child's best interests and also as counsel to represent the legal interests of the children, pursuant to Section 2313(a), which mandates the appointment of counsel to represent the children's legal interests in contested termination proceedings. 23 Pa.C.S. § 2313(a).

The court then turned to consider whether and to what extent appellate courts could evaluate *sua sponte* GAL/Counsel's simultaneous representation of children's legal interests and best interests. The court acknowledged that appellate courts are limited to addressing issues raised by the parties, absent certain exceptions such as subject matter jurisdiction or where this Court has specifically authorized review. It recognized this Court's teaching that a restrictive invocation of *sua sponte* review "respect[s] orderly judicial decision-making, afford[s] counsel the opportunity to brief and argue issues, permit[s] the court to benefit from counsel's advocacy, and uphold[s] issue preservation rules." *Id.* at 669 (citing *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975)). It noted that this Court had yet to provide it authority to address a GAL/Counsel's representation *sua sponte. Id.*

The court recognized, however, that previous Superior Court panels had addressed, *sua sponte,* issues relating to an individual's statutory right to counsel. It recited that a separate panel of the Superior Court had recently addressed *sua sponte* the failure to appoint legal counsel for children in a termination hearing, citing *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018). We briefly address the details and reasoning of the Superior Court in *K.J.H.*

In *K.J.H.*, the Superior Court recognized that the orphans' court in that case failed to appoint legal counsel for a child in a termination proceeding. The court concluded that it could address the issue *sua sponte* based upon our holding in *In re L.B.M.*, 161 A.3d 172 (Pa. 2017), that the absence of counsel constitutes structural error which affects the

framework of the termination proceedings. The court in *K.J.H.* analogized to its prior decision in *In re X.J.*, 105 A.3d 1 (Pa. Super. 2014), where the Superior Court had similarly determined that it could address, *sua sponte*, the failure of an orphans' court to appoint counsel for a parent in a termination proceeding pursuant to a different subsection of Section 2313, 23 Pa.C.S. § 2313(a.1). *K.J.H.*, 180 A.3d at 413 n. 2.

The Superior Court's decision in *X.J.*, in turn relied upon that court's prior holding in *Commonwealth v. Stossel*, 17 A.3d 1286, 1290 (Pa. Super. 2011), where the court reviewed on its own motion whether the petitioner had intelligently, knowingly, and voluntarily waived his statutory right to counsel for his first Post-Conviction Relief Act ("PCRA") petition. The court in *Stossel* reasoned "that where an indigent, first-time PCRA petitioner was denied his right to counsel - or failed to properly waive that right - this [c]ourt is required to raise the error *sua sponte* and remand for the PCRA court to correct that mistake."[11] *Id.* The court in *X.J.* applied this same phraseology to a mother's right to counsel in a termination of parental rights proceeding, concluding that it was required to address the issue *sua sponte* and remand for a new termination hearing, given that the mother had neither been provided notice of her right to counsel nor been appointed counsel during the termination proceedings.

Returning to the Superior Court's reasoning in *K.J.H.*, addressing the appointment of legal counsel for children in termination proceedings, the court opined that the need to address, *sua sponte,* the lack of counsel for children under Section 2313(a) was amplified by the inability of children to assert their right on their own due to their minority status. The Superior Court accordingly deemed *sua sponte* review required where an orphans' court fails to appoint any counsel to represent children in a contested termination of parental rights case, in violation of Section 2313(a). *K.J.H.*, 180 A.3d at 414.

---

[11] We observe that this Court has not spoken to the issue addressed in *Stossel.*

After reviewing, *inter alia*, its decisions in *K.J.H.* and *Stossel,* the Superior Court in the case at bar opined that the "Superior Court only has the authority to raise *sua sponte* the issue of whether the lower court appointed any counsel for the child, and not the authority to delve into the quality of the representation." *Id.* at 667-68. To restate its holding, the Superior Court explained that it did "not have the authority [to] review *sua sponte* whether a conflict existed between counsel's representation and the child's stated preference in an involuntary termination of parental rights proceeding." *Id.* at 670. In so doing, the Superior Court overruled its prior decision in *In re Adoption of T.M.L.M.*, 184 A.3d 585 (Pa. Super. 2018), where a panel of the court previously concluded that *sua sponte* review was required to ascertain whether the GAL had a conflict in representing the children's legal interests in involuntary termination cases.[12]

The Superior Court in the case at bar additionally opined that the structure of the termination proceedings provided other mechanisms to guard against a GAL/Counsel representing a child's legal interests despite a conflict with best interests. It observed that counsel is bound by Rule of Professional Conduct 1.7 to notify the orphans' court in the event of a conflict to allow for the appointment of separate counsel. The Superior Court also recognized that the other parties in the termination proceeding, such as the parents

---

[12] In *T.M.L.M.*, although the orphans' court opined that it had appointed counsel in compliance with our decision in *L.B.M.*, the record did not contain an order reflecting an appointment to represent the child's legal interests, but instead only contained a reference to the appointment of counsel as a GAL. The Superior Court in *T.M.L.M.* then delved into the transcript of the hearing to consider the counsel's representation, where counsel revealed that she had not met or talked with the child prior to the termination hearing, but instead had spoken with the foster mother. Additionally, the counsel's statements were phrased in terms of the child's best interests, without an expression of the child's preferred outcome. The Superior Court in *T.M.L.M.* concluded, *sua sponte* that counsel had not "effectively represented [the c]hild's legal interest" and remanded for the appointment of new legal counsel to ascertain whether the termination was consistent with the child's preferred outcome and for the court to then determine whether a new hearing is necessary. *Id.* at 590-91*.*

and the child welfare organization, also provide a check as they have standing to raise the issue of conflicted representation. Moreover, the court noted that the orphans' court itself has the ability to address the issue of conflict, as occurred in this case where the order appointing Attorney Hollenbeck indicated the absence of a conflict of interest.

The Superior Court also addressed and rejected Mother's challenges to the merits of the termination, based upon its conclusion that the trial court did not err or abuse its discretion in determining that CYS had met its burden by clear and convincing evidence to establish grounds for termination. It specifically opined that the record supported the trial court's conclusion that "Mother demonstrated a continued incapacity to parent the Children and Mother was unwilling or unable to remedy the incapacity in the near future," as required for Section 2511(a)(2).[13] *Id.* at 674. It additionally concluded that the trial court did not abuse its discretion in determining that termination was in the best interests of the children as required by Section 2511(b). [14]

President Judge Emeritus Bender filed a dissenting opinion joined by Judges Kunselman and McLaughlin. "[T]o assure that the child's right is protected," the

---

[13] The court observed that if trial court's decision was supported based upon one of the identified grounds for termination, it need not address the other grounds.

[14] The Superior Court majority opinion was authored by Judge Dubow and joined by Judges Panella, Lazarus, and Murray. The court also discussed the additional three issues upon which it directed briefing, *see supra* at 9 n.10, which address aspects of a court's review of the potential conflict of a GAL/Counsel representing a child's legal interests and best interests. As we affirm the court's decision not to adopt *sua sponte* review of a GAL/Counsel's potential conflict of interest, we find it unnecessary to speak to these issues.

We observe that Judge Olsen, joined by Judge Nichols, filed a concurring and dissenting opinion. She concurred with the majority's decision that the court "lack[ed] authority to consider, *sua sponte*, whether a conflict exists between a child's legal interest and the child's best interest in the context of a contested termination of parental rights proceeding," but dissented from the majority's determinations on the three additional questions, which she viewed as "advisory in nature." *Id.* at 676 (Olsen, J., concurring in part and dissenting in part).

dissenting judges concluded that the Superior Court should review *sua sponte* whether GAL/Counsel had a conflict in representing both a child's best interests and legal interests, "particularly in light of the fact that a failure to raise a question of separate counsel for the child is non-waivable." *Id.* at 677-78 (Bender, P.J.E., dissenting). The dissent opined that by not allowing *sua sponte* review of whether a conflict existed, the court was "potentially allowing the permanent severing of a child's relationship with his or her birth family without protecting his or her legal rights and best interests." *Id.* at 678. The dissent further explained its view that "if the record does not contain anything to support whether a conflict exists or does not exist, the trial court must receive evidence to support either position and render a decision." *Id.* The dissent would have remanded for the trial court to determine whether a conflict existed in this case.

### III. Parties' Arguments

Mother asserts that "[s]*ua sponte* review of whether a child's legal interest was represented by counsel during a contested termination of parental rights proceeding is essential to uphold the mandate of Section 2313(a) of the Adoption Act." Mother's Brief at 12. This review, she contends, should extend beyond merely determining if counsel was appointed to also include "review of whether a child's legal interest was represented and advanced" by counsel which requires consideration of "whether the child's preference was ascertainable from the record, and whether the attorney acting ostensibly in the role of counsel advocated for the child's preferred outcome." *Id.* at 10-11.

She argues that appellate courts should take an active role in reviewing the appointment of non-conflicted counsel to protect children's due process rights and also "to ensure the integrity" and fundamental fairness of termination proceedings. *Id.* at 13. Mother emphasizes that court review is necessary because children are unable to assert their own rights given their "legal and developmental incapacity to do so independently." *Id.*

In support, Mother relies upon the Superior Court's prior invocations of *sua sponte* review involving a statutory right to counsel for PCRA petitioners in *Stossel* and for parents facing termination of parental rights in *X.J.*, discussed *supra.* Mother asserts that these cases "involve a well-recognized and important right, a fundamental interest at stake in the proceeding, and involve contexts where the assistance of counsel is essential to achieving the relief sought." *Id.* at 19. She argues that *sua sponte* review of counsel's representation of a child's legal interests is similarly critical in termination proceedings given that "a child in a contested [termination of parental rights] proceeding requires the assistance of counsel to explain their options, advise them of all possible outcomes, and then zealously advocate for the outcome they desire." *Id.* at 20.

Mother criticizes as too limited the Superior Court's decision to review only whether counsel was appointed to represent the child, as provided in *K.J.H.,* arguing instead that review must also encompass "whether that attorney fulfilled the role of counsel - to ascertain and advance the children's legal interest(s)." *Id.* at 21. Mother contends that the children's legal interests are advanced by the GAL/Counsel placing the interests on the record and advocating for those interests. She posits that "[w]here the record fails to establish a child's preferred outcome, or fails to support a conclusion that a child is not capable of expressing a preference due to age, development, or any other reason, the court cannot conclude that the child was represented by counsel as required by Section 2313(a)." *Id.* at 28. She rejects as insufficient the entry of an order, as in this case, merely asserting that counsel did not have a conflict representing the legal interests and best interests, as it fails to indicate the evidence upon which the trial court made it is determination nor whether the Orphans' Court inquired regarding the Children's preferences. Id. at 22-23.

She also deems the GAL/Counsel's obligation to uphold his professional responsibilities to serve as an insufficient safeguard to the Children's right to

representation of their legal interests as disciplinary proceedings against the attorney fail to restore the child's right to representation at the termination hearing. *Id.* at 24-25 (referencing Pa. Rule of Professional Conduct 1.7). Instead, she argues that judicial oversight is required to protect the children's right to representation and that such oversight requires an "affirmative inquiry into and identification of conflicts, and appointment of separate counsel when a conflict becomes apparent." *Id.* at 25.

The Juvenile Law Center, the Pennsylvania Legal Aid Network, and twenty-five national, state, and local organizations and individuals jointly filed an *amici curiae* brief in support of Mother. *Amici* urge the court to employ *sua sponte re*view in termination proceedings to ensure that children receive the benefit of their statutory right to counsel to advance their legal interests, as they lack the legal capacity to assert their own rights in this critical proceeding which could permanently server the children's relationship with their biological parents. *Amici* emphasize that *sua sponte* review, however, should be limited to cases where the "record is devoid of evidence that counsel was appointed for the child, separate from the role of a GAL, or when it lacks any evidence that counsel has determined and articulated the child's desired outcome." Juvenile Law Center Amici Brief at 11 n.6.[15]

Appellee CYS responds urging this Court to affirm the Superior Court's decision and decline to authorize *sua sponte* appellate review of GAL/Counsel's representation of children. As did the Superior Court, CYS emphasizes courts' limited authority to engage in *sua sponte* review and highlights this Court's admonition against *sua sponte* review, which disrupts the orderly development of a case by the parties. CYS's Brief at 8 (citing *Wiegand*, 337 A.2d 256). Notably, it clarifies that the *sua sponte* review granted by the

---

[15] The Juvenile Court Project additionally files an *amicus curiae* brief in support of Mother, arguing in favor of *sua sponte* review to determine whether counsel placed the children's preferred outcome on the record.

Superior Court in *Stossel* and *K.J.H.* involved whether counsel was appointed and not the quality of counsel's representation.

CYS additionally emphasizes that the orphans' courts have developed procedures to address the appointment of counsel for children following this Court's recent pronouncements. Specifically, it recognizes that, in the wake of *L.B.M.* and *T.S.*, attorneys are now advised to place the children's preferences on the record during contested termination proceedings to demonstrate a lack of a conflict of interest. Indeed, it highlights an October 2018 seminar sponsored by the Pennsylvania Children and Youth Administrators at which Superior Court judges recommended that counsel place children's interests on the record in termination proceedings. CYS's Brief at 10, n. 2; *see also* Hollenbeck's Brief at 14 n.5.

CYS emphasizes that the termination proceeding in this case, however, occurred in February 2018 between this Court's decisions in *L.B.M.* and *T.S.* At such time, CYS avers that courts and counsel assumed that if an attorney serving as both GAL and the children's counsel had a conflict in representing both the best interests and legal interests, then the counsel was obligated to disclose the conflict and ask the court to appoint separate counsel. In contrast, silence of the GAL/Counsel was evidence that the interests did not conflict. It further highlights that no party raised the issue of a conflict of interest in the proceedings before the Orphans' Court, despite ample opportunity.[16]

Assuming *arguendo* that this Court allows appellate review *sua sponte*, CYS argues that it "should be limited to whether the record demonstrates that the child's desired outcome was known and if a conflict existed between that outcome and the GAL's

---

[16] CYS observes that Mother has not alleged at any point in the proceedings, including before this Court, that the Children's legal interests in this case in fact conflicted with GAL/Counsel's view of their best interests. CYS's Brief at 8-9. It further emphasizes that at least J.C.C., the youngest of the children who was two at the time of the termination proceedings, was too young under this Court's jurisprudence to be capable of expressing his preferred outcome. *Id.* (citing *T.S.,* 192 A.2d at 1092).

determination of best interests of the child." CYS Brief's at 3. It urges the Court to guard against allowing *sua sponte* review of the quality of GAL/Counsel's representation.

Attorney Hollenbeck, the GAL/Counsel in this case, additionally files an Appellee brief. He emphasizes that the state of the law relating to the representation of children in termination proceedings pursuant to Section 2313(a) underwent "swift and significant changes shortly before" the termination proceedings in this case and avers that the law has been in a "state of flux" during the appellate proceedings in this case. Hollenbeck's Brief at 12. Attorney Hollenbeck emphasizes that this case arose immediately after the decision in *L.B.M.,* when there was no stated requirement that the child's legal interests be placed on the record nor a mandate that the GAL/Counsel declare on the record that the legal interests and best interests did not conflict.[17]

While not included in the record, Attorney Hollenbeck avers in his brief to this Court that he met with the Children on December 18, 2017, in conjunction with a permanency review hearing to ascertain their preferred outcome. He asserts that the Children's preferred outcome aligned with his view of their best interests. As set forth above, he observes that when he was appointed as legal counsel by the trial court, the court specifically found that he could represent their legal interests without conflict. He additionally states that he met with the Children again approximately ten days prior to the termination hearing, at which time he again confirmed that their preferred outcomes aligned with his view of their best interest. Attorney Hollenbeck echoes CYS's

---

[17] Attorney Hollenbeck recognizes that following this Court's decision in *T.S.* and subsequent to the termination proceedings in the case at bar, a plurality of the Superior Court opined that an attorney representing the child's legal interests should place the child's preferences on the record if they were ascertainable. Hollenbeck's Brief at 14 (citing *In re K.R.*, 200 A.3d 969, 985 (Pa. Super. 2018)). He observes that the court in *K.R.* also opined that children are deprived of their statutory right to counsel under Section 2313(a) if their appointed counsel fails to ascertain their preferences. Id.

observation that counsel's silence at the time of the termination proceedings in this case should be viewed as an indication that the best interests did not conflict with the legal interests. In support, he observes that, unlike in this case, he specifically sought the appointment of a separate counsel in four other cases when he determined that the children's legal and best interest did not align. Hollenbeck's Brief at 8-9.[18]

Assuming arguendo that this Court holds that the Superior Court should review the existence of a conflict of interest *sua sponte*, Attorney Hollenbeck agrees with CYS and the Juvenile Law Center that any review of that issue should be very limited.

### IV. Analysis

This Court has recently and repeatedly divided over the exact contours of the statutory right to counsel provided by Section 2313(a). *T.S*, 192 A.3d 1080 (Pa. 2018); *L.B.M.*, 161 A.3d 172 (Pa. 2017). Nevertheless, we unanimously agreed as to the central holding that trial courts are obligated by Section 2313(a) to appoint counsel to serve the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the termination of parental rights proceedings. *T.S.,* 192 A.3d at 1082. Given the importance of having an individual dedicated to advocating for a child's legal interests, a majority of this Court have also agreed that, when a child's legal interests conflict with the child's best interests, those interests must

---

[18] We recite Attorney Hollenbeck's averments in regard to his interactions with the Children as they form part of his argument, while also recognizing that they are not part of the record in this case. We emphasize that the issue before this Court is a question of law regarding whether, and if so how, appellate courts should engage in *sua sponte* review of GAL/Counsel's representation of children in termination hearings. Given our conclusion, we do not address the factual question of whether Attorney Hollenbeck could represent the legal interests and best interests of the Children in this case, other than to recognize that the Orphans' Court concluded that he could do so without conflict. *See* Order of Jan. 8, 2018.

be represented by separate individuals during the termination proceeding to ensure that the child's legal interests are presented to the orphans' court.[19] [20]

In the present case, we specifically consider whether, and if so how, an appellate court has authority "to review, *sua sponte*, whether a child's legal interest was represented by counsel during an involuntary termination of parental rights hearing, as required by Section 2313(a) of the Adoption Act." *In re Adoption of K.M.G.*, 221 A.3d 649 (Pa. 2019).

---

[19] We recognize that a minority of justices would have found that a child's legal interests must always be represented by counsel separate from the GAL representing their best interests. *L.B.M.*, 161 A.3d at 181 (Wecht, J., joined by Donohue and Dougherty, JJ.).

As is evident from his eloquent responsive opinion in this case, Justice Wecht has been consistently of the view that children are entitled to two lawyers: one to represent their legal interests and another to represent their best interests. While we respect his view and admire the zeal with which he expounds upon it, we simply disagree. We have confidence in the trial courts, as well as the child-welfare bar, to determine whether a conflict exists in the representation of children's best interests and legal interests. Moreover, we conclude that the safeguards put in place by this Court and the Superior Court sufficiently protect children's rights in these proceedings.

[20] As previously stated, the child's "legal interests" represented by counsel include the child's preferred outcome, whereas the "best interests" represented by a GAL reflect what the GAL believes will provide the most beneficial outcome for the child's well-being. To explain the distinction, we have relied upon language relating to dependency actions involving similar concepts:

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

*T.S.*, 192 A.3d at 1082 n.2 (quoting Pa.R.J.C.P. 1154, cmt.); *see also L.B.M.*, 161 A.3d at 174 n.2.

While "legal interests" could be viewed as encompassing a broader bundle of interests, we decline to expand the definition in the current case absent briefing on the issue.

As this issue presents a question of law, our standard of review is *de novo*. *T.S.*, 192 A.3d at 1087.

To begin, we emphasize this Court's long standing policy disfavoring the exercise of *sua sponte* review by appellate courts and, instead, enforcing our Rules of Appellate Procedure mandating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). We recently reiterated the rationale originally expressed in *Wiegand*, 337 A.2d 256 (Pa. 1975):

> The policy reasons expressed by our [C]ourt twenty-five years ago behind prohibiting the *sua sponte* raising of issues by an appellate court to reverse a judgment are as valid today as then. *Sua sponte* consideration of issues disturbs the process of orderly judicial decision making. A reviewing court addressing an issue on its own deprives counsel of the opportunity to brief and argue the issues and the court the benefit of counsel's advocacy. It renders the lower proceedings a mere dress rehearsal for further appellate review.

*Danville Area School Dist. v. Danville Area Educ. Ass'n, PSEA/NEA*, 754 A.2d 1255, 1259 (Pa. 2000) (internal citation omitted); *see also Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016). With this general precept in mind, we consider the arguments forwarded in favor of *sua sponte* review in the case at bar.

**A. Sua sponte review of whether an orphans' court appointed counsel for a child pursuant to Section 2313(a)**

We initially observe that the Superior Court in the case at bar reaffirmed its prior holding in *K.J.H.*, mandating that an appellate court *sua sponte* verify that the orphans' court appointed counsel to represent the legal interests of a child involved in a termination of parental rights case. *K.M.G.*, 219 A.3d at 668. As explained below, we agree with the Superior Court that *sua sponte* review of the appointment of counsel in necessary to fulfil the mandate of Section 2313(a), which unambiguously provides that "[t]he court shall

appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." 23 Pa.C.S. § 2313(a).[21]

As noted, this Court has interpreted this section as requiring "that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.* the child's preferred outcome." *T.S.*, 192 A.3d at 1082. Moreover, we have held that "the failure to appoint a separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis." *Id.*; *L.B.M.*, 161 A.3d at 183. We additionally concluded that the issue was non-waivable, because the right belonged to the child who, given that he or she was unrepresented, could not have challenged the lack of counsel. *T.S.*, 192 A.3d at 1087.

As in *T.S.*, we emphasize that children do not have that the ability or opportunity to assert the denial of their right to counsel. Given the critical importance and permanency of termination proceedings, as well as children's inability to navigate the termination process themselves, we hold that appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with Subsection 2313(a).

---

[21] Section 2313 is entitled "Representation" and includes subsection (a), which provides as follows:

> (a) Child. -- The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a). The subsequent subsections of Section 2313 direct the provision of counsel for parents and address the payment of costs.

**B. Sua sponte review of whether the orphans' court determined that counsel could represent a child's legal interests and best interests without conflict**

We additionally conclude that where an orphans' court has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict. We emphasize that appellate review of this question does not involve second-guessing whether GAL/Counsel in fact had a conflict, as discussed in the next section of this opinion, but solely whether the orphans' court made the determination in the first instance.

We again observe that this Court has unanimously determined that a single attorney cannot represent a child's best interests and legal interests if those interests conflict. *T.S.*, 192 A.3d at 1082. Accordingly, in fulfilling its duty under Section 2313(a) as construed by this Court, the orphans' court must determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child. Given the essential nature of the GAL/Counsel's ability to represent a child without conflict and this Court's mandate that the orphans' court make that determination prior to appointment, we conclude that appellate courts should verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict.

We emphasize that the *sua sponte* review mandated by this section and the prior section involve binary, record-based determinations. Specifically, we grant *sua sponte* review to evaluate (1) whether the orphans' court appointed counsel to represent the legal interests of the children and (2) if the appointed counsel also serves as GAL, whether the orphans' court determined that the child's best interests and legal interests did not conflict. Both inquiries involve a yes or no answer that can be addressed by a review of the orphans' court order (or lack thereof) appointing counsel to represent a child under

Section 2313(a).  We conclude that this limited review strikes an appropriate balance between protecting children who cannot assert their own right to counsel, while insuring the least disruption to "the process of orderly judicial decision making" in termination proceedings.  *Danville Area School Dist*, 754 A.2d at 1259.

**C. *Sua sponte* review to determine if a conflict exists that would prevent counsel's representation of children's legal interests and best interests**

In contrast to the discrete *sua sponte* review adopted above, we decline to authorize *sua sponte* appellate review of whether the record demonstrates that GAL/Counsel had a conflict in representing both a child's legal interests and best interests.  We conclude that review of the existence of a conflict does not involve a simple record-based determination, but instead would require appellate courts to address a fact-specific determination of whether and to what extent a child's preferred outcome conflicts with a GAL/Counsel's view of her best interests.

The determination of whether a conflict exists does not necessarily result in a yes or no answer but involves a nuanced determination.  Indeed, both the attorney's view of the child's best interests and the child's preferred outcome likely lie, somewhat nebulously, on a continuum between strongly favoring termination and strongly disfavoring termination.  It is not for an appellate court to determine how closely the interests must align or overlap to negate the existence of a conflict.  We are especially hesitant to have appellate courts reweigh an orphans' court's determination that the interests do not conflict, where the orphans' court has witnessed the parties over the course of the dependency and termination proceedings and is presumably aware of the relationship formed between the GAL/Counsel and the children.  *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (deferring to "trial courts that often have first-hand observations of the parties spanning multiple hearings" in termination of parental rights proceedings).

We, thus, conclude that the Superior Court in the case at bar made the correct distinction in regard to issues it should raise *sua sponte* by mandating review of the existence, but not the adequacy, of statutorily-required counsel for children in termination proceedings. Unlike the appointment of legal counsel, the potential conflict of interest in a GAL/Counsel's representation of a child is not something that appellate courts should review *sua sponte*, without the benefit of appellate advocacy. Where an orphans' court enters an order appointing counsel to represent the child and has determined that counsel does not have a conflict representing the child's best and legal interests, an appellate court should not look behind the face of the order, *sua sponte,* to determine whether counsel had a conflict in representing the child.[22]

**D. *Sua sponte* review of whether GAL/Counsel sufficiently advocated for the children's preferred outcome during the termination proceedings**

We additionally reject the argument that appellate courts should review *sua sponte* whether a GAL/Counsel sufficiently advocated for the child's legal interests by requiring the child's preferred outcome to be placed on the record. We observe that Subsection 2313(a) simply does not require counsel to place the child's legal interests on the record. Indeed, the statutory directive is to the court, not counsel. As stated above, it provides, "The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." 23 Pa.C.S. § 2313(a). It is inappropriate and, indeed, unwise for this Court to engage in the

---

[22] We additionally observe that review of the propriety of counsel's appointment contrasts with the Superior Court's handling of other statutory provisions regarding the right to counsel. Specifically, in *Stossel*, 17 A.3d 1286, the Superior Court deemed it appropriate to address *sua sponte* the failure to provide a petitioner with his statutory right to counsel in a first PCRA proceeding or to determine if the petitioner knowingly, voluntarily, and intelligently waived his right to counsel. Similarly, the Superior Court in *X.J.*, 105 A.3d 1, approved the *sua sponte* review of the existence of counsel to represent the parents in a termination hearing. In neither *Stossel* nor *X.J.*, however, did the Superior Court review *sua sponte* the adequacy or effectiveness of the counsel.

judicial creation of what amounts to new statutory duties where we have repeatedly counseled that "[w]hen interpreting the meaning of a statute, we must not 'add, by interpretation, a requirement not included by the General Assembly.'" *Kegerise v. Delgrande*, 183 A.3d 997, 1005 (Pa. 2018) (quoting *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016)).

We additionally reject the underlying assumption that the absence of a child's preference on the record equates to counsel's failure to ascertain the child's preferred outcome or to provide effective representation of his or her client for purposes of Section 2313(a). Children for whatever reason may understandably resist stating whether their parents' rights should be terminated and may be averse to declaring their preference between their natural and foster parents. While we recognize that it may be a best practice for a child's legal counsel to divulge the child's preferences in order to advocate for their client's preferred outcome, we find nothing in the language of the Adoption Act requiring that their preference be placed on the record, which instead only requires that the child be appointed counsel. Moreover, we observe that the child's legal counsel has a duty of confidentiality to their client, the child, such that they should not be compelled to disclose the child's preferences. We are thus wary to create a bright-line rule requiring counsel and the courts to place the children's preferred outcome on the record as we are concerned by both the potential violation of a child's attorney-client privilege and with the real specter of placing unconscionable stress on a child by mandating that her feelings regarding her parents and caretakers be made public and permanently enshrined in the record.

Instead, we leave the decision of whether to place the child's preference on the record to the child's counsel based upon counsel's legal determinations in representing his client, as well as the orphans' court which has often witnessed the child, relevant family members, and other stakeholders through months of hearings, sitting as both the

juvenile court and orphans' court. *See T.S.M.*, 71 A.3d at 267. Accordingly, we reject *sua sponte* review of whether counsel placed the child's interest on the record.

### E. Application in the Case at Bar

We now apply the *sua sponte* review set forth above to the case at bar. Specifically, we consider whether the Orphans' Court appointed counsel to represent the Children's legal interests in the contested termination of Mothers' parental rights as required by Section 2313(a) and whether the Orphans' Court determined that the appointed counsel could represent the Children's best interests and legal interests without conflict, as mandated by this Court's precedent applying Section 2313(a), *see T.S.*, 192 A.3d at 1082.

We observe that the Orphans' Court in the case at bar unequivocally set forth the answer to both inquiries in its Section 2313(a) order appointing Attorney Hollenbeck. Specifically, on January 8, 2018, the Orphans' Court entered an order on the record for each child appointing Attorney Hollenbeck, who was then serving as the Children's GAL, to represent the legal interests of the four children. On the face of the orders, the court expressly "found that the Guardian *ad litem*, Mark J. Hollenbeck, Esq., may adequately represent both the child's best interests and legal interests without conflict." Order of Jan. 8, 2018. We conclude that these orders satisfy the necessary *sua sponte* review to conclude that the Orphans' Court appointed non-conflicted legal counsel such that a remand is not required in this case.

### V. Conclusion

For the reasons set forth above, we conclude that our appellate courts should engage in limited *sua sponte* review of whether children have been afforded their statutory right to legal counsel when facing the potential termination of their parents' parental rights. Specifically, courts should determine (1) if the trial court appointed statutorily-mandated counsel to represent a child's legal interests as required by Section 2313(a) and (2) where

a GAL/Counsel was appointed to represent both the child's legal and best interests, whether the orphans' court determined that those interests did not conflict. In so doing, we do not authorize *sua sponte* review of whether the GAL/Counsel had a conflict in representing both a child's legal interests and best interests or whether counsel placed the child's preferred outcome on the record, as those fact-intensive, nuanced determinations are not well-suited for *sua sponte* appellate review.

Applying the relevant review to the case at bar, we conclude that the Orphans' Court properly appointed Attorney Hollenbeck as legal counsel for the Children after determining in an order on the record that the attorney could represent the Children's best interests and legal interests without conflict. We observe that the grant of review in this case did not encompass a review of the merits of the termination decision, and therefore, we do not speak to those issues. Accordingly, we affirm the decision of the Superior Court's order, which affirmed the termination of Mother's parental rights to the Children in this case.

Chief Justice Saylor and Justices Todd, Dougherty and Mundy join the opinion.

Chief Justice Saylor files a concurring opinion in which Justice Dougherty joins.

Justice Dougherty files a concurring opinion.

Justice Wecht files a concurring and dissenting opinion in which Justice Donohue joins.